In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-8018

DAVID HUGHES, individually and on behalf of all others
similarly situated,

*Plaintiff-Petitioner,*

*v.*

KORE OF INDIANA ENTERPRISE, INC., *et al.*,

*Defendants-Respondents.*

Petition for Leave to Appeal from the
United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-01329-JMS-MJD — **Jane E. Magnus-Stinson**, *Judge.*

SUBMITTED AUGUST 8, 2013 — DECIDED SEPTEMBER 10, 2013

Before POSNER, MANION, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff in this class action suit
seeks leave to appeal from the district judge's decertification
of the class. Fed. R. Civ. P. 23(f). We have decided to allow
the appeal in order to further the development of class ac-
tion law (*Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 835
(7th Cir. 1999)) regarding issues of notice in cases in which

the potential damages per class member are very slight, and the suitability of class action treatment of such cases. The plaintiff has filed a brief in support of its motion for leave to appeal. The defendants have chosen to file nothing, so we can proceed to the merits. The defendants did not oppose class certification in the district court. Does that mean they favor it? Maybe, if they think that otherwise they might face multiple suits, though as we'll see this is extremely unlikely.

The defendants, affiliated companies that we'll treat as one and call Kore, owned ATMs in two bars in Indianapolis said to be popular with college students. The suit charges Kore with failing to post a notice on the ATMs that Kore charges a fee for their use. Such an omission violates, or rather violated, a provision of the Electronic Funds Transfer Act, 15 U.S.C. § 1693b(d)(3); see also Regulation E, 12 C.F.R. § 205.16(c), and so exposed Kore to liability to users of its ATMs. At the time of the alleged violations, the Act required two fee notices: a sticker notice on the ATM and an on-screen notification during transactions. Kore provided the latter notice but not, the suit alleges, the former. The Act has since been amended to remove the requirement of the sticker notice. Act of Dec. 20, 2012, Pub. L. No. 112–216, 126 Stat. 1590; *Charvat v. Mutual First Federal Credit Union*, 2013 WL 3958300, at *1 (8th Cir. Aug. 2, 2013).

A plaintiff in an individual suit who proves a violation of the Act is entitled to his actual damages, if any, or to statutory damages of at least $100 but not more than $1000. 15 U.S.C. §§ 1693m(a)(1), (a)(2)(A). If a class action is filed instead, and is successful, the class is entitled to "such amount [of damages] as the court may allow," but only up to the lesser of $500,000 or 1 percent of the defendant's net worth.

§ 1693m(a)(2)(B)(ii). No minimum amount of damages to which a class member is entitled is specified, in contrast to the $100 minimum award to the plaintiff in a successful individual suit. § 1693m(a)(2)(B)(i). In both types of case (individual and class action) the court is to award "a reasonable attorney's fee" if the suit is successful, paid of course by the defendant. § 1693m(a)(3).

The parties stipulated that the limit to damages in this class action suit would be $10,000, that being 1 percent of Kore's net worth. The stipulation further states that there were more than 2800 transactions involving the two ATMs during the period covered by the suit (a year beginning on September 30, 2010). We're not told how many more, so let's assume the total was 2800, which would make the damages $3.57 per transaction at most (given the $10,000 class limit). The transaction fee was $3, and that would be the ceiling on a plaintiff's actual damages per transaction. Those damages might well be zero, if the plaintiff couldn't prove that had he known there was a $3 fee he would not have used the ATM.

The record doesn't indicate the distribution of transactions among class members. If each of them engaged in only one transaction and the class therefore has 2800 members, each would be entitled at most to just $3.57 (10,000 ÷ 2800) if the suit was successful. (Whether total damages in a class action under the Electronic Funds Transfer Act can exceed actual damages is unclear from the Act's wording. See 15 U.S.C. § 1693m(a)(2)(B).)

The district judge decertified the class on two independent grounds. One was that the class members would do better bringing individual suits, since if an individual suit were successful the plaintiff would be entitled to at least $100 in

damages. Although some class members may have made a great many transactions on the ATMs, it appears that the $100 to $1000 range for statutory damages is per suit rather than per transaction. For the statute states that liability "in the case of an individual action [is] an amount not less than $100 nor greater than $1,000." 15 U.S.C. § 1693m(a)(2)(A). The alternative to a class action—individual lawsuits most or even all of which would be seeking damages of only $100— would therefore not be realistic. What lawyer could expect the court to award an attorney's fee commensurate with his efforts in the case, if his client recovered only $100? There is no indication that many people, or indeed any people, have filed individual claims under the provision of the Electronic Funds Transfer Act that requires a sticker on an ATM warning that there is a fee for using it. Although one reason for the paucity of litigation may be unfamiliarity with the law, another may be the difficulty of finding a lawyer willing to handle an individual suit in which the stakes are $100 or an improbable maximum of $1000 (improbable because it is difficult to see what aggravating factors might warrant a maximum award of statutory damages in suits against Kore, given how small Kore's fee was). True, should an individual suit be successful the plaintiff's lawyer would be entitled to a fee paid by the defendant. But what is a reasonable attorney's fee for obtaining a $100 judgment? More than one might think, if the judge thought that the suit had broadcast a needed warning about compliance with the Electronic Funds Transfer Act (albeit the specific provision that Kore is charged with violating has been repealed); but enough to interest a competent lawyer? The paucity of litigation suggests not.

The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing, given the difficulty of interesting a lawyer in handling a suit for such modest statutory damages as provided for in the Electronic Funds Transfer Act. But in this case the amount of damages that each class member can expect to recover is probably too small even to warrant the bother, slight as it may be, of submitting a proof of claim in the class action proceeding.

Since distribution of damages to the class members would provide no meaningful relief, the best solution may be what is called (with some imprecision) a "cy pres" decree. Such a decree awards to a charity the money that would otherwise go to the members of the class as damages, if distribution to the class members is infeasible. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); 3 William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 10:17 (5th ed. 2013). (For criticism, see Martin H. Redish, Peter Julian & Samantha Zyontz, "Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis," 62 *Fla. L. Rev.* 617 (2010).) Payment of $10,000 to a charity whose mission coincided with, or at least overlapped, the interest of the class (such as a foundation concerned with consumer protection) would amplify the effect of the modest damages in protecting consumers. A foundation that receives $10,000 can use the money to do something to minimize violations of the Electronic Funds

Transfer Act; as a practical matter, class members each given $3.57 cannot.

As explained in *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004), "cy pres" is the name of a doctrine of trust law that allows the funds in a charitable trust, if they can no longer be devoted to the purpose for which the trust was created, to be diverted to a related purpose; and so when the polio vaccine was developed the March of Dimes Foundation was permitted to redirect its resources from combating polio to combating other childhood diseases. The trust doctrine is based on the idea that the settlor would have preferred a modest alteration in the terms of the trust to having the corpus revert to his residuary legatees because the trust's original aim could no longer be achieved. In a class action the reason for a remedy modeled on cy pres is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement (or of the judgment, in the rare case in which a class action not dismissed pretrial goes to trial rather than being settled) to the class members. When there's not even an indirect benefit to the class from the defendant's payment of damages, the "cy pres" remedy (misnamed, but the alternative term found in some cases—"fluid recovery"—is misleading too) is purely punitive. But we said in *Mirfasihi* that the punitive character of the remedy would not invalidate it. *Id*. at 784–85. Other courts, disagreeing, require the charity or other recipient to have an interest parallel to that of the class. E.g., *In re Lupron Marketing & Sales Practices Litigation*, 677 F.3d 21, 33 (1st Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–39 (9th Cir. 2011). No matter; it should be possible in this case to find a charity

concerned with consumer protection issues of the general character presented by the case.

The judge's second ground for decertification was that the requirement of notice to class members could not be satisfied. ATMs do not store users' names. Instead they keep track of each transaction by assigning a 10-digit identification number to it. The first six digits identify the user's bank; the last four identify the user. To attach names to those last four digits would require subpoenaing each bank identified by the first six. Since Kore's two ATMs were in college bars, obtaining the identity of all the users might require subpoenaing hundreds of banks (the hometown banks of the students, by now mostly ex-students, who are the class members).

Rule 23(c)(2)(B) of the civil rules requires (for a class action under Rule 23(b)(3), as this one is) only the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The members of the class in this case can't be identified through *reasonable* effort, effort commensurate with the stakes. (If they could be, they would be entitled to individual notice even if it were very costly, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974), as the language of Fed. R. Civ. P. 23(c)(2)(B) implies.) When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); Federal Judicial Center, *Manual for Complex Litigation* § 21.311, pp. 287–88 (4th ed. 2004).

The notice proposed by class counsel consists of sticker notices on Kore's two ATMs and publication of a notice in

the principal Indianapolis newspaper and on a website. That is adequate in the circumstances. We are mindful that notice by publication involves a risk that a class member will fail to receive the notice and as a result lose his right to opt out of the class action—a right that can be valuable if his individual claim is sizable. But there is no indication that any member of the class in this case has a damages claim large enough to induce him to opt out and bring an individual suit for damages. And notice posted conspicuously in both bars in which Kore's ATMs were located may be the best way to reach the bars' regulars (though many of them will have graduated from college and left Indianapolis)—and they are the patrons most likely to have made repeated use of the ATMs and thus to have a potential interest in opting out. See *Holtzman v. Turza*, 2013 WL 4506176, at *5–6 (7th Cir. Aug. 26, 2013); *Travelers Property Casualty v. Good*, 689 F.3d 714, 717–20 (7th Cir. 2012); *Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 474–75 and n. 15 (5th Cir. 2011). But even someone who had made 100 transactions on a Kore ATM during the year embraced by the complaint could obtain actual damages of only $300.

The district court added a further twist to the issue of notice by pointing out that the provision of the Electronic Funds Transfer Act that Kore is alleged to have violated is applicable only to consumer users of ATMs, 15 U.S.C. § 1693b(d)(3)(A), not to business users, so that it would be necessary to determine which users of Kore's ATMs should be excluded from the class. But this problem is more theoretical than real in the circumstances of this case; for it is unlikely that ATMs in bars are commonly used for business transactions.

A deeper question is whether a class action should be permitted when the stakes, both individual and aggregate, in a class action are so small—so likely to be swamped by the expense of litigation—as they are in this case. But we don't think smallness should be a bar. This is obvious when what is small is not the aggregate but the individual claim; indeed that's the type of case in which class action treatment is most needful. See, e.g., *Mace v. Van Ru Credit Corp., supra*, 109 F.3d at 344–45. But even when as in this case the aggregate claim—the sum of all the class members' claims—is meager, such treatment will often be appropriate. A class action, like litigation in general, has a deterrent as well as a compensatory objective. See, e.g., 1 Rubenstein, *et al., supra*, §§ 1:7–8. "[S]ociety may gain from the deterrent effect of financial awards. The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). The deterrent objective of the Electronic Funds Transfer Act is apparent in the provision of statutory damages, since if only actual damages could be awarded, the providers of ATM services such as Kore might have little incentive to comply with the law.

The compensatory function of the class action has no significance in this case. But if Kore's net worth is indeed only $1 million (which it is if 1 percent of Kore's net worth is only $10,000, as stipulated), the damages sought by the class, and, probably more important, the attorney's fee that the court will award if the class prevails, will make the suit a wake-up call for Kore and so have a deterrent effect on future violations of the Electronic Funds Transfer Act by Kore and others. The sticker requirement is no more; but a judgment would remind Kore to take greater care in the future to

comply with federal law, however irksome compliance may seem.

But the district court must be careful not to allow the litigation expenditure tail to wag the remedy dog. *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 179 (3d Cir. 2013). (A reason, remember, to allow notice by publication in this case.) The court must be alert to prevent class counsel from milking a small case for huge fees, lest the threat of an award of such fees induce a small defendant, such as Kore, to throw in the towel, agreeing to a settlement favorable to the class even if the defendant has an excellent defense. "When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good." *Kohen v. Pacific Investment Mgmt. Co.*, 571 F.3d 672, 678 (7th Cir. 2009).

With the maximum statutory damages $100 to $1000 per individual plaintiff (and the actual share of each class member much less because of their likely number) and the ATM user fee (the maximum actual damages per transaction) only $3, the cy pres remedy may be the only one that makes sense, though that is just our guess given the early stage of the litigation. Ordinarily of course class action damages go to the class. But in a case like this, the award of damages to the class members would have no greater deterrent effect than the cy pres remedy, would do less for consumer protection than if the money is given to a consumer protection charity, and would impose a significant administrative expense that handing the $10,000 over to a single institution would avoid.

A time-saving alternative might be a class action with the stated purpose, at the outset of the suit, of a collective award to a specific charity. We are not aware of such a case, but mention the possibility of it for future reference.

The order decertifying the class is reversed and the case remanded for further proceedings consistent with this opinion. We hold only that the judge's opinion decertifying the class does not provide adequate grounds for her ruling. There may be such grounds. And our extended discussion of how to distribute damages was not meant to imply that Kore *must* be liable in this case. For all we know, it has good defenses.

REVERSED AND REMANDED.