NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3629-13T3

VINCENT DANIELS, individually
and on behalf of a class,

       Plaintiff-Respondent,

  v.

HOLLISTER CO., a Delaware
Corporation,

       Defendant-Appellant.

| APPROVED FOR PUBLICATION |
| :---: |
| **May 13, 2015** |
| **APPELLATE DIVISION** |

_____

Argued October 21, 2014 — Decided May 13, 2015

Before Judges Fisher, Accurso and Manahan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2310-12.

Brian J. Murray (Jones Day) of the Illinois bar, admitted pro hac vice, argued the cause for appellant (Grossman, Heavey & Halpin, P.C., and Mr. Murray, attorneys; Richard A. Grossman, of counsel and on the briefs; Mr. Murray, on the briefs).

James Shedden (Shedden Law) of the Illinois bar, admitted pro hac vice, argued the cause for respondent (Flitter Lorenz, P.C., and Mr. Shedden, attorneys; Cary L. Flitter, Theodore E. Lorenz and Andrew M. Milz, of counsel and on the brief; Mr. Shedden and Vincent L. DiTommaso (DiTommaso Lubin, P.C.) of the Illinois bar, admitted pro hac vice, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

We granted leave to appeal an order granting class certification[1] to consider whether the trial judge correctly held plaintiff was not required to show the class members are "ascertainable." Although we doubt the "ascertainability" doctrine adopted by some federal courts should ever be incorporated into our jurisprudence, we conclude in this matter of first impression that "ascertainability" must play no role in considering the certification of a low-value consumer class action and, therefore, affirm.

Plaintiff commenced this lawsuit on behalf of himself and others similarly situated against defendant Hollister Co., a clothing retailer with outlets throughout the United States.

---

[1] Orders granting or denying class certification are not appealable as of right; an aggrieved party must move for leave to appeal pursuant to Rule 2:5-6(a). We recognize, however, that the decision to grant or deny class certification often has a profound effect on the litigation. Accordingly, we will hereafter, as a general matter, liberally indulge applications for leave to appeal: (1) "when a denial of class status effectively ends the case (because, say, the named plaintiff's claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation)"; (2) "when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle"; and (3) when permitting leave to appeal "will lead to a clarification of a fundamental issue of law." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 293 (1st Cir. 2000); see also Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834-35 (7th Cir. 1999).

A-3629-13T3

Plaintiff alleges that in or around December 2009, defendant conducted a promotion by which customers purchasing at least $75 of merchandise were given a $25 gift card for use in its stores and on its website. Plaintiff alleges that even though these transferable gift cards possessed "no expiration date," defendant voided all outstanding cards on January 30, 2010. Plaintiff alleges a gift card, which stated it had "no expiration date," was dishonored when presented by him at one of defendant's stores in New Jersey on January 22, 2011.

Claiming in-store signs during the promotion asserted that "$25 gift card expires 1/30/10," but also acknowledging some cards expressly stated they had "no expiration date," and others were silent in that regard, defendant admits that as January 30, 2010 approached it "sent emails to customers who had registered their email addresses to remind them of the upcoming expiration date." Notwithstanding defendant's factual assertions, we review an order granting class certification by according plaintiff "every favorable view" of the complaint. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 96 (2007) (quoting Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 223 (1972)); see also Lee v. Carter-Reed Co., 203 N.J. 496, 518 (2010); Int'l Union of Operating Eng'rs. Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 376 (2007) (hereafter "Merck"). Accordingly, we

proceed on the assumption that the facts contained in the complaint are true and that, as of January 30, 2010, defendant began and will continue to dishonor $25 gift cards given out in December 2009 despite representations at the time that the gift cards would not expire.

Our courts not only liberally indulge the allegations of the complaint but also "liberally construe[]" Rule 4:32-1 in favor of class certification. Iliadis, supra, 191 N.J. at 103 (quoting Delgozzo v. Kenny, 266 N.J. Super. 169, 179 (App. Div. 1993)). In Varacallo v. Massachusetts Mutual Life Insurance Co., 332 N.J. Super. 31, 45 (App. Div. 2000), we said that in the context of consumer transactions, "class actions should be liberally allowed . . . under circumstances that would make individual actions uneconomical to pursue." In short, as the Court made clear in Iliadis, "a class action 'should lie unless it is clearly infeasible.'" 191 N.J. at 103 (quoting Riley, supra, 61 N.J. at 225).

In addition to this liberal approach, courts tasked with determining whether a class should be certified must focus on the Rule's purposes, which our Supreme Court described in the following way:

> Unitary adjudication through class litigation furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent

> treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants.
>
> [Iliadis, supra, 191 N.J. at 104.]

Of further importance is the Court's admonition that the decision to certify a class should be guided by the policy that favors an even playing field:

> In such disputes, where the claims are, in isolation, "too small . . . to warrant recourse to litigation," the class-action device equalizes the claimants' ability to zealously advocate their positions. That equalization principle "remedies the incentive problem facing litigants who seek only a small recovery." [T]he class action's equalization function opens the courthouse doors for those who cannot enter alone.
>
> [Ibid. (quoting In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 435 (1983) and Muhammad v. Cnty. Bank of Rehoboth Beach, Del., 189 N.J. 1, 17 (2006), certif. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007)).]

In short, the class-action device's "'historic mission'" is caring for "'the smaller guy.'" Ibid. (quoting Marvin E. Frankel, Amended Rule 23 From a Judge's Point of View, 32 Antitrust L.J. 295, 299 (1966)).

There is no doubt that the certified class in question consists of numerous individuals who have allegedly suffered small injuries. In his written opinion, the trial judge noted defendant's concession that "over $3,000,000 worth of $25 gift

cards were voided." In fact, there is no dispute that all requirements expressly mentioned in <u>Rule</u> 4:32-1(a) — "numerosity, commonality, typicality, and adequacy of representation," <u>Lee</u>, <u>supra</u>, 203 <u>N.J.</u> at 519; <u>Cadillac</u>, <u>supra</u>, 93 <u>N.J.</u> at 424-25 — are present.

Defendant nevertheless argues class certification should not have been permitted because of an element it claims is embedded in the <u>Rule</u>'s interstices — ascertainability. This alleged implicit element, recognized by some federal courts in construing <u>Federal Rule of Civil Procedure</u> 23, insists that "the class must be currently and readily ascertainable based on objective criteria." <u>See</u>, <u>e.g.</u>, <u>Marcus v. BMW of N. Am., L.L.C.</u>, 687 <u>F.</u>3d 583, 593 (3d Cir. 2012).

In arguing the trial judge erred in granting class certification, defendant contends that the defined class[2] "fails the ascertainability requirement and violates due process" because defendant will have no ability "to test class

---

[2]The order in question describes the class as: "Persons who possess [defendant's] promotional gift cards in hard copy stating 'no expiration date' that were issued as part of the 2009 promotion and that were voided by [defendant] on or after January 30, 2010, and persons who discarded such cards because they were told that the cards expired or had been voided, but not persons who received a refund of the expired balance on their cards, not persons who lost their cards, not persons who discarded their cards for reasons other than having been told that the cards expired or had been voided, and not persons who gave their cards to somebody else."

membership," because "absent class members" will have no "opportunity to opt-out," and because the preclusive effect of any judgment will be unknowable and unenforceable. Defendant claims our courts have recognized this doctrine but, even if that were not so, we should now recognize and apply it. We disagree on both scores.

We conclude, as did the trial judge, that our courts have never viewed Rule 4:32-1 as requiring that a class be "ascertainable" as a condition for certification. Defendant's contrary argument relies on Iliadis, where, in a footnote, it is stated that class certification:

> presupposes the existence of a properly defined class. Thus, "[e]ven before one reaches the four prerequisites for a class action, there must be an adequately defined class." Richard L. Marcus & Edward F. Sherman, Complex Litigation: Cases and Materials on Advanced Civil Procedure 231 (4th ed. 2004). "[T]he proposed class must be sufficiently identifiable without being overly broad. The proposed class may not be amorphous, vague, or indeterminate and it must be administratively feasible to deter-mine whether a given individual is a member of the class." White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002) (quotations and internal citation omitted).
>
> [Iliadis, supra, 191 N.J. at 106 n.2.]

This footnote, however, is inapposite. It simply emphasized the need for a clear definition of the contours of the class; it says nothing about whether the class members must be

ascertainable before certification may be permitted. In fact, the word "ascertainable" does not appear in the opinion.

Those federal courts that found "ascertainability" silently residing within Federal Rule of Civil Procedure 23 so held because they believed this judge-made doctrine: "eliminates 'serious administrative burdens that are incongruous with the efficiencies expected in a class action' by insisting on the easy identification of class members"; "protects absent class members by facilitating the "'best notice practicable'" required by federal rules; and "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." Marcus, supra, 687 F.3d at 593 (citations omitted). This "ascertainability" doctrine, however, is different from the requirement that a class be properly defined, as the Third Circuit recognized when it later held that "the question of ascertainability" in Marcus was "analyzed . . . separately from the question of whether the class was properly defined." Shelton v. Bledsoe, 775 F.3d 554, 560 (3d Cir. 2015). So, while defendant trumpets the Iliadis footnote as proof our Supreme Court adopted "ascertainability" as a requirement for class actions commenced pursuant to our own Rule, in fact, the footnote's language is premised on the Court's examination of what is required to properly define a class without imposing on

plaintiff the obligation of then showing that all class members are identifiable.  Accordingly, we reject defendant's contention that the "ascertainability" doctrine has already been recognized by our courts.

We also dispense with the argument that we should hold the "ascertainability" doctrine is implicitly contained within Rule 4:32-1.

First, as already observed, our Supreme Court has not recognized the doctrine despite discussing the requirements for class certifications at length in Lee, Merck and Iliadis.[3] Nothing in those decisions remotely suggests that anything other than the Rule's expressed requirements are relevant, and nothing in those decisions suggests the Rule's requirements are to be interpreted with anything other than liberality in favor of certification.

Second, federal experimentation with the ascertainability doctrine seems far from over and, indeed, this doctrinal wave may have broken before ever cresting.  Only a few circuits have expressly adopted it,[4] and the Third Circuit, which produced the

---

[3] We observed earlier that the word "ascertainability" does not appear in Iliadis; the word also makes no appearance in either Lee or Merck.

[4] See EQT Prod. Co. v. Adair, 764 F.3d 347, 358-59 (4th Cir. 2014); Little v. T-Mobile U.S.A., Inc., 691 F.3d 1302, 1304
(continued)

Marcus/Hayes/Carrera trilogy on which defendant relies,[5] appears quite unsettled. For example, in a case decided after the trilogy, the court expressly held that "ascertainability is not a requirement for certification of a (b)(2)[6] class seeking only injunctive and declaratory relief." Shelton, supra, 775 F.3d at 563. The final act of the trilogy — disagreement about rehearing en banc in Carrera, supra, 727 F.3d 300, set forth in Carrera v. Bayer Corp., No. 12-2621, 2014 U.S. App. LEXIS 15553 (3d Cir. May 2, 2014) — demonstrates further uncertainty about the scope and application of the doctrine in class actions brought pursuant to Federal Rule of Civil Procedure 23(b)(3), the federal counterpart to Rule 4:32-1(b)(3), which applies here. And the rollback of the doctrinal wave may be seen in an even more recent opinion; in concurring in a judgment reversing an order that denied certification on ascertainability grounds, Circuit Judge Rendell observed that "the lengths to which the majority goes in its attempt to clarify what our requirement of

(continued)
(11th Cir. 2012); John v. Nat'l. Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007); In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006).

[5]This trilogy consists of Marcus, to which we have already referred, Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013), and Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349 (3d Cir. 2013).

[6]This abbreviation refers to Federal Rule of Civil Procedure 23(b)(2), the federal counterpart to Rule 4:32-1(b)(2).

A-3629-13T3

ascertainability means, and to explain how this implicit requirement fits in the class certification calculus, indicate that the time has come to do away with this newly created aspect of Rule 23 in the Third Circuit."  Byrd v. Aaron's Inc., No. 14-3050, 2015 U.S. App. LEXIS 6190, at *39 (3d Cir. Apr. 16, 2015).[7]

The concerns expressed by Circuit Judges Ambro and Rendell, in Carrera and Byrd, respectively, seem more in tune with our Supreme Court's description of the policies governing the class-action device in Lee, supra, 203 N.J. at 517-21, Merck, supra, 192 N.J. at 382-85, and Iliadis, supra, 191 N.J. at 103-05, than those that generated the ascertainability doctrine.  Indeed, their views are more in line with the guiding principle

---

[7]We are mindful that Byrd and the opinions in favor of and against rehearing en banc in Carrera are not "published." Nevertheless, Rule 1:36-3, which prohibits our citation to "appellate opinions not approved for publication," except in defined circumstances, has not been understood as applying to unpublished opinions from other jurisdictions.  The Rule's prohibition is based on the concept declared in the first sentence of Rule 1:36-3 that "unpublished opinion[s]" are not to be cited because they are not precedential.  Because decisions of the federal courts of appeals are not binding on this court regardless of whether they are published, see In re Contest of Nov. 8, 2011, 210 N.J. 29, 45 (2012), we do not interpret Rule 1:36-3 as precluding our citation to unpublished opinions of the federal courts of appeals.  Moreover, we cite to Byrd and Carrera not because we view them as either precedential or non-precedential but merely to shed light on a judicially-created doctrine that defendant believes should be transplanted in this jurisdiction.  We find these unpublished federal decisions highly relevant in seeking an understanding of how or to what extent this doctrine is being applied elsewhere.

described by the Supreme Court of the United States. "The policy at the very core of the class action mechanism" was the desire "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" and the mechanism "solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689, 709 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Accordingly, we agree with the concurring and dissenting judges in Carrera and Byrd that when the concept of ascertainability is applied inflexibly it becomes a device that serves to burden or eliminate nascent class actions without providing any societal benefit.[8] We find that this federal doctrine as urged here imposes far too heavy a burden on class certification where the purported injuries to class members are

_____

[8]In his dissent in Carrera, Circuit Judge Ambro, the author of Marcus, argued the panel had lost sight of the intended flexibility that gave birth to this judicially-created doctrine. Carrera, supra, 2014 U.S. App. LEXIS 15553, at *6-9. We agree. It should not be overlooked that the class-action mechanism has equitable roots, see Hansberry v. Lee, 311 U.S. 32, 41, 61 S. Ct. 115, 118, 85 L. Ed. 22, 27 (1940); Iliadis, supra, 191 N.J. at 103, and the hallmark of equity is its flexibility, see Crane v. Bielski, 15 N.J. 342, 349 (1954); Thompson v. City of Atlantic City, 386 N.J. Super. 359, 375 (App. Div. 2006), aff'd in part, modified in part, 190 N.J. 359 (2007).

so minimal as to preclude the likelihood they would be individually asserted. Although we have misgivings about the ascertainability doctrine's use at the certification stage in any class action, we decline to consider its application in cases other than those involving low value consumer class actions because of the concept's novelty.

Ascertainability, as defined by defendant, is particularly misguided when applied to a case where any difficulties encountered in identifying class members are a consequence of a defendant's own acts or omissions. Had defendant obtained the identities of consumers when giving out $25 gift cards, the problems it now offers as grounds for upending certification would not exist. Allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies — an outcome admittedly un-troubling to some federal courts[9] — is not in harmony with the principles governing class actions. See Byrd, supra, 2015 U.S. App. LEXIS 6190, at *50 (Rendell, J., concurring) (recognizing that "[w]ithout the class action mechanism, corporations selling small-value items for which it is unlikely that consumers would

---

[9]See Marcus, supra, 687 F.3d at 593 (observing, in referring to a number of unpublished district court opinions, "[s]ome courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails").

keep receipts are free to engage in false advertising, overcharging, and a variety of other wrongs without consequence"). In the final analysis, "ascertainability" does not benefit the chief goal of our court rules — the fair and efficient administration of justice; the Third Circuit's experiences suggest the doctrine is practically unworkable in application and is being exploited by defendants in unsuitable cases to evade liability. See Hughes v. Kore of Ind. Enter., Inc., 731 F.3d 672, 677 (7th Cir. 2013) (recognizing that "when what is small is not the aggregate but the individual claim . . . that's the type of case in which class action treatment is most needful[,]" and emphasizing that a class action "has a deterrent as well as a compensatory objective").

In rejecting the applicability of the "ascertainability" doctrine when certifying class actions when members are numerous consumers with small injuries, we are guided by the very reason the class-action mechanism was created. As Justice Albin expressed for the Court in Lee:

> At times, a large number of individuals may have valid claims related to consumer fraud or some other wrong, but those claims in isolation are "too small . . . to warrant recourse to litigation." The perpetrator of that fraud or wrong also may be a corporate entity that wields enormous economic power. A class action permits "claimants to band together" and, in doing so, gives them a measure of equality against a corporate

adversary, thus providing "a procedure to remedy a wrong that might otherwise go unredressed." In short, the class action is a device that allows "an otherwise vulnerable class" of diverse individuals with small claims access to the courthouse. In addition, a class action furthers other policy goals, including "judicial economy," "consistent treatment of class members," and "protection of defendants from inconsistent [results]."

[203 N.J. at 517-18 (citations omitted).]

As noted earlier, the class-action device was intended to empower "the smaller guy," Iliadis, supra, 191 N.J. at 104, who lacks either the incentive to sue for a small recovery or the strength to take on a corporate giant in litigation. This has been the predominant theme of all our Supreme Court's decisions in this field. We therefore decline the invitation to water down — if not eliminate — the availability of the class-action device to low-value consumers by appending an onerous requirement that serves no equitable purpose and cannot be located in Rule 4:32-1.

Even if ascertainability was relevant to some degree at this stage and in this case, we would find it poses no obstacle to class certification.[10] Defendant offers the specter of

---

[10]Defendant has raised legitimate concerns about the preclusive effect of a final judgment in class actions when class membership is uncertain. These concerns, however, are outweighed at the certification stage by the benefits provided by class

(continued)

"extensive and individualized fact-finding or 'mini-trials'" in identifying class members, or that membership might ultimately be determined solely on the basis of the purported member's "say so." Marcus, supra, 687 F.3d at 593-94. This seems to us at most a matter of concern at the claims administration stage, not a ground for rejecting class certification. And even then, the argument does not pose a very compelling ground for decertification. See Iliadis, supra, 191 N.J. at 117 (observing that "[d]enial of class status due to manageability concerns is disfavored and, 'in view of the public interest involved in class actions, should be the exception rather than the rule'" (citations omitted)). The record on appeal does not suggest that future identification problems cannot be overcome through the application of some ingenuity, if necessary. Instead, the record reveals that defendant identified and canceled over $3,000,000 worth of gift cards. Are not the many individuals still in possession of cancelled gift cards easily ascertainable? Is there a need for objective evidence other than a member's presentation of such a card? To be sure, the other part of the defined class — those individuals who discarded a $25 gift card "because they were told that the cards

_____

(continued)
status, at least in the low value consumer class actions we address.

A-3629-13T3

expired or had been voided" — may need to show more, perhaps through submission of an affidavit; it has not been shown, however, how such a process unfairly hampers the defense. See Boundas v. Abercrombie & Fitch Stores, Inc., 280 F.R.D. 408, 417-18 (N.D. Ill. 2012).

To demand more of plaintiff at this stage is to impose nothing other than an artificial barrier to the court's ability to render justice in a situation that suggests — in assuming, as we must,[11] the truth of plaintiff's allegations — that defendant defrauded or deprived thousands upon thousands of a benefit once extended. Consumers may very well have purchased more than $75 of defendant's merchandise because of the lure of a $25 gift card, and this bargain was arguably snatched away by defendant's unilateral cancellation of the gift card at a later date. The class-action device was created not only to allow compensation for such small wrongs but also to deter future wrongdoing in the marketplace. Hughes, supra, 731 F.3d at 677.

---

[11]To be clear, we only assume for present purposes what it is that plaintiff alleges. Defendant has suggested a number of factual grounds that may eventually demonstrate it engaged in no wrongdoing. This, however, is neither the time nor the place to resolve their dispute.

A-3629-13T3

The order granting class certification is affirmed and the matter remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION