**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2102-19T1

LESROY E. BROWNE,
on behalf of himself and
those similarly situated,

     Plaintiff-Appellant,

v.

CAPITAL ONE BANK (USA), N.A.
and CAVALRY SPV I, LLC,

     Defendants-Respondents.

_____

Argued telephonically June 2, 2020 –
Decided July 20, 2020

Before Judges Yannotti, Hoffman, and Currier.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5583-15.

Bharati Olga Sharma argued the cause for appellant (The Wolf Law Firm LLC, and Kim Law Firm, LLC, attorneys; Bharati Olga Sharma and Andrew R. Wolf, on the briefs).

Brian D. Schmalzbach (McGuireWoods LLP) of the Virginia bar, admitted pro hac vice, argued the cause for respondents (McGuireWoods LLP, attorneys; Philip Andrew Goldstein, on the brief).

PER CURIAM

On leave granted, we consider plaintiffs'[1] appeal from a December 10, 2019 order which denied reconsideration of a prior order denying class certification. In this matter, plaintiffs sought statutory damages under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Because it is unclear whether the trial court considered the issue of harm under the TCCWNA and other statutory requirements for certification under Rule 4:32-1(b)(3), we reverse and remand for reconsideration of the motion for class certification.

In 2006, Browne opened a credit card account for his personal use with defendant Capital One Bank (U.S.), N.A. (Capital One). In 2010, Capital One mailed Browne an updated Customer Agreement that contained the terms and conditions applicable to his use of the credit card. The Customer Agreement contained the following terms pertinent to this appeal:

The Law that Applies to Your Agreement.

---

[1] We refer to Lesroy Browne and the putative class members collectively as "plaintiffs."

2

We make decisions to grant credit and issue you a [c]ard from our offices in Virginia. This Agreement will be interpreted using Virginia law. Federal law will be used when it applies.

You waive any applicable statute of limitations as the law allows. Otherwise, the applicable statute of limitations period for all provisions and purposes under this Agreement (including the right to collect debt) will be the longer period provided by Virginia or the jurisdiction where you live. If any part of this Agreement is found to be unenforceable, the remaining parts will remain in effect.

. . . .

Assignment.

This Agreement will be binding on, and benefit, any of your and our successors and assigns.

. . . .

We may transfer your Account and this Agreement to another company or person without your permission and without prior notice to you. They will take our place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after you are informed or learn that we have transferred your Account or this Agreement, we can handle your payment in any way we think is reasonable. This includes returning the payment to you or forward[ing] the payment to the other company or person.

Browne defaulted on his payments in October 2010. Capital One "charged off" Browne's account in 2012. Thereafter, Capital One assigned its rights, title

A-2102-19T1

and interest in Browne's account, along with other charged-off Capital One credit card accounts, to defendant Calvary SPV I, LLC (Calvary) in July 2014.[2]

On May 22, 2015, Cavalry, as assignee of Capital One, filed a collection action against Browne for the unpaid balance of $4022.70 on his credit card and attorney's fees. The complaint included a copy of the Customer Agreement. In Browne's answer, he raised fourteen affirmative defenses, including the assertion that Calvary's claims were "barred by the applicable statute of limitations."

In September 2015, Browne filed a class action complaint and jury demand against Capital One and Cavalry on behalf of himself and a class of similarly situated consumers.[3] The proposed class under Rule 4:32-1(b)(3) consisted of all consumers who resided in or were otherwise citizens of New Jersey on the date the complaint was filed, who were issued a Customer Agreement containing a "The Law that Applies to Your Agreement" term at any time within six years prior to the date the complaint was filed, and whose

---

[2] In a certification supporting defendants' opposition to plaintiffs' motion for certification, Calvary asserted it owned 17,370 Capital One accounts as of May 25, 2017. Of those accounts, 511 were in litigation, and 2273 accounts were reduced to judgment.

[3] The two actions were consolidated in Middlesex County in February 2016.

consumer account was assigned to Cavalry. The proposed class excluded class members "who filed for Chapter 7 Bankruptcy relief and received a discharge in Chapter 7 Bankruptcy up to and including the date the class is certified."

Plaintiffs alleged the Customer Agreement term at issue – "The Law that Applies to Your Agreement" – violated the TCCWNA. The complaint asserted defendants were liable to the putative class under the TCCWNA as "the seller, lessor, creditor, lender or bailee that issued the Capital One Customer Agreement and/or as the assignee of the Capital One Customer Agreement."

Plaintiffs further alleged the Customer Agreement: (1) "fail[ed] to inform the consumer whether the purported waiver of the statute of limitations is permitted by law in New Jersey"; (2) "does not set forth the applicable statute of limitations in Virginia, which inhibits the cardholder from comparing the Virginia statute of limitations to the statute of limitations in the cardholder's jurisdiction"; and (3) "does not set forth the applicable statute of limitations in New Jersey, which inhibits a cardholder from New Jersey from comparing the Virginia statute of limitations to the statute of limitations in New Jersey."

Virginia's statute of limitations for collection actions is three years for unwritten contracts and five years for written contracts. Va. Code Ann. § 8.01-246. New Jersey's statute of limitations for contract actions is six years,

regardless of whether a contract is written or unwritten. N.J.S.A. 2A:14-1. Therefore, Browne asserted the applicable statute of limitations was material to his defense of the collection action because Cavalry's complaint was filed more than three years after Browne became delinquent in his payments.

Browne and each member of the putative class sought the $100 minimum statutory civil penalty permitted under the TCCWNA and reasonable attorneys' fees and costs.

Plaintiffs initially moved for class certification in November 2016 but withdrew the application after the parties agreed to engage in settlement discussions. When mediation was unsuccessful, plaintiffs refiled their motion in April 2017. Thereafter, Browne was deposed.

During his deposition, Browne testified that he recalled receiving the Customer Agreement in the mail. Although he did not think he read the whole agreement, he recalled reading the section in which he agreed to waive the applicable statute of limitations. He said the language violated the TCCWNA because he was not provided "sufficient information to be able to make a proper decision as to . . . the statutes of limitation here in New Jersey and Virginia." He clarified that he could not decide whether to sign the Customer Agreement

6

because he did not know how long the statute of limitations was in New Jersey or Virginia.

Browne stated he signed the Customer Agreement but did not have a specific recollection of doing so. He admitted his use of the credit card meant he accepted the terms of the Customer Agreement. Browne was unsure if he had incurred any monetary damages arising from defendants' TCCWNA violation.

Although the court heard oral argument on the second class certification motion, the application was later withdrawn without prejudice. Thereafter, the court issued several case management orders, further discovery took place, and settlement discussions continued.

When the settlement negotiations failed again, plaintiffs filed a third motion for class certification in November 2017.[4] Defendants opposed the motion, relying on the Supreme Court's decision in <u>Dugan v. TGI Friday's, Inc.</u>, 231 N.J. 24 (2017). In the alternative, defendants requested the court stay any decision pending the Supreme Court's ruling in <u>Spade v. Select Comfort Corp.</u>, 232 N.J. 504 (2018).

---

[4] In all three applications, plaintiffs moved for class certification under <u>Rule</u> 4:32-1(b)(3).

A-2102-19T1

After the Court issued its decision in Spade,[5] the trial court permitted the parties to submit supplemental briefing and heard oral argument on the application. Defendants argued that Browne and the members of the putative class could not establish they were aggrieved consumers under the TCCWNA as articulated in Dugan and Spade.

On June 29, 2018, the court denied the motion for class certification. In its oral decision, the court stated:

> I just want to capture one portion of [defendants'] opposition . . . with regard to the requirements for class certification.
>
> Specifically with the Supreme Court's decisions in Dugan and Spade/Wenger this is where the [c]ourt wants to focus. . . .
>
> The defendant asserts the [c]ourt should deny class certification because without undertaking highly individualized inquiries[,] plaintiff cannot prove that each class member is an aggrieved consumer as required by N.J.S.A. 56:12-17.
>
> Under TCCWNA, only [an aggrieved] consumer . . . can bring a claim. . . .
> Certainly the Supreme Court in Spade/Wenger defined what an aggrieved consumer constitutes. The defendant asserts that in Dugan the plaintiff sought to certify a class challenging the restaurant['s] practice of omitting beverages prices from the menus as violating

[5]    Spade was consolidated with the appeal in Wenger v. Bob's Discount Furniture, LLC, No. 16-1572 (3d Cir. 2016). Spade, 232 N.J. at 508.

[a] clearly established legal right of the putative class and . . . the Supreme Court denied [class] certification because . . . there was no way to prove that each member had received a menu . . . .

Here the defendant asserts that the plaintiffs could not in that case prove receipt of the menus through circumstantial evidence such as server training materials or customer receipts and that <u>Dugan</u> also recognized an interaction requirement.

[Defendants contend plaintiffs must show p]roof of the plaintiff[s'] interact[ion] with the alleged offending writing and the particular provisions of that writing. Further, the defendant asserts that with regard to the <u>Spade/Wenger</u> decision like in <u>Dugan</u>[,] addressing the receipt interaction here would require the [c]ourt to analyze the particular circumstances surrounding each putative class member[']s individual TCCWNA claim.

At a minimum the [c]ourt would need to determine who received the customer agreement, actually read it, and specifically th[e] part . . . that read . . . the law that applies to your agreement.

The defendant also asserts that under [<u>Spade/Wenger</u>] the class could only constitute aggrieved consumers[,] that is consumers who have actual harm[,] [to] obtain a remedy under TCCWNA.

Here although the defendants assert that it can be beyond a monetary claim[;] the defendant points out . . . at most the claims that the language at issue hampered . . . plaintiff's ability to determine the applicable statute of limitations, but the plaintiff has shown nothing regarding the effect [of] [h]is supposed inability to do so.

9

Well, the [c]ourt feels that this . . . would be an aggrieved consumer in terms of the ability to determine the applicable statute of limitations.

I mean, that is a right that cannot be minimized. Where the [c]ourt had difficulty with this present application seeking class certification is that other portion under Dugan and that is the proofs that would be required as to individual plaintiffs and whether or not then under that analysis under Dugan and under Spade/Wenger whether or not a class certification can be made at this time.

It's for that reason[] . . . that the [c]ourt . . . is denying this present application for class certification and invites the plaintiffs to seek to renew their motion when they can address the issues raised by the [c]ourt as a result of the Spade/Wenger decision and also Dugan.

So at this time, the motion for class certification is denied. I will ask the special master to schedule a conference if that will assist [the plaintiffs] in getting . . . to seek class certification again and whether they need any class certification discovery in that regard.

I know you've had discovery, but I don't know if there is anything else that you would need to address the concerns the [c]ourt has in granting class certification at this time.

On January 8, 2019, plaintiffs moved for reconsideration of the court's June 29, 2018 decision. On December 10, 2019, the court denied the motion for reconsideration without prejudice for failing to provide a copy of the transcript of the June decision. On the same day, plaintiffs' counsel wrote a letter to the

10

court advising that the transcript of the June decision was previously provided in a February 22, 2019 supplemental certification.

On December 11, 2019, the court vacated its December 10, 2019 order and entered a new order denying the motion for class certification. The judge wrote on the order:

> Plaintiff waited approximately six months to file this motion for reconsideration. The court invited this motion in the event plaintiff sought discovery as contemplated by the court's June 29, 2018 ruling. No discovery has been conducted. The court relies, and adopts herein, by reference, its decision of June 29, 2018. This motion is untimely.

On December 31, 2019, plaintiff filed a motion for leave to file an interlocutory appeal. We granted the motion. During the pendency of the appeal, plaintiff filed a motion before the trial court for leave to file an amended class action complaint. The trial court granted the motion. Thereafter, plaintiff filed an amended class action complaint, adding a claim for injunctive relief and seeking class certification under Rules 4:32-1(b)(2) and (b)(3).[6]

On appeal, plaintiffs argue the trial court erred in denying the motion for reconsideration because the court misconstrued Dugan in its application of the

---

[6] During oral argument on the appeal, plaintiffs' counsel advised they intended to pursue class certification under Rules 4:32-1(b)(2) and (b)(3).

"interaction" requirement in the June 2018 ruling. In addition, plaintiffs contend the court further erred in its determination that the reconsideration motion was untimely.

We can quickly dispose of the second argument. The order denying plaintiffs' motion for class certification was an interlocutory order. Despite the denial of class certification, Browne still retained his individual claims.

Under Rule 1:7-4(b), a motion for reconsideration of an interlocutory order is determined pursuant to Rule 4:42-2. An interlocutory order is "subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." R. 4:42-2; cf. R. 4:49-2 (providing that a motion for reconsideration of a final order must be filed within twenty days of service of the order); Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 96 (App. Div. 2008) (noting that "the time prescriptions set forth in Rule 4:49-2 apply to final judgments and orders, not interlocutory orders, which are reviewable at any time" until final judgment).

Moreover, the June 29, 2018 order permitted plaintiffs to conduct additional discovery and renew their motion for class certification. The court did not set deadlines for the renewal of the motion. The motion was not untimely.

We turn then to plaintiffs' contention that the trial judge erred in denying class certification because she misconstrued the "interaction" requirement under Dugan and failed to consider facts showing class members interacted with the Customer Agreement. We review the court's order for an abuse of discretion. Dugan, 231 N.J. at 50.

Specifically, plaintiffs contend that, under Dugan and Spade, to establish a violation of the TCCWNA, Browne and the putative class members must demonstrate only that they received the Customer Agreement, not that they "actually read" the Customer Agreement and "The Law that Applies to Your Agreement" provision. Plaintiffs assert the evidence that the Customer Agreement was mailed to class members is sufficient to prove receipt of and interaction with the Customer Agreement. Furthermore, once Browne and the class members opened credit card accounts with Capital One, and used their credit cards, they established a contractual relationship and accepted the terms of the Customer Agreement.

In addition, plaintiffs allege that individualized inquiries are not necessary to prove the actual harm requirement under Spade. Browne claims he was harmed because the language of the Customer Agreement did not inform him whether New Jersey law permitted the waiver of a statute of limitations defense.

Because it was unclear whether and how to defend himself in the collection lawsuit, Browne contends he was forced to hire counsel.

Defendants reassert that Browne and each class member must show they "received the document, read it, and acted or failed to act to his or her detriment because of the alleged failure to disclose." (emphasis omitted). They contend a putative class member could establish harm only by proving that he or she suffered an adverse effect as a result of reading (i.e., interacting with) the "Law that Applies to Your Agreement" provision. Defendants maintained they would need to conduct individualized inquiries of each putative class member as to whether he or she received and read – interacted – with the Customer Agreement.

In addition, defendants contend there are other barriers to class certification requiring the denial of plaintiffs' motion. They assert there are individualized issues regarding their debt-related compulsory counterclaims and setoff defenses that would predominate over common questions.

Furthermore, defendants argue the trial court would need to assess the affirmative defenses of all 13,192 putative class members with outstanding balances. And, if a class were certified, many class members would suffer "a

net loss," making class certification an inferior method of adjudicating their claims.[7]

When considering a motion for class certification, a court is required to examine "the claims, defenses, relevant facts, and applicable substantive law." Dugan, 231 N.J. at 49-50 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 107 (2007)). The court "must 'accept as true all of the allegations in the complaint,' and consider the remaining pleadings, discovery . . . , and any other pertinent evidence in a light favorable to [the] plaintiff . . . ." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 505 (2010) (citations omitted).

Although the court "must undertake a 'rigorous analysis'" to determine if the requirements of Rule 4:32-1 have been satisfied, Dugan, 231 N.J. at 49 (quoting Iliadis, 191 N.J. at 106-07), the court must also "liberally indulge the allegations of the complaint [and] 'liberally construe[]' Rule 4:32-1 in favor of class certification" to achieve the goal that "a class action 'should lie unless it is clearly infeasible.'" Daniels v. Hollister Co., 440 N.J. Super. 359, 363 (App. Div. 2015) (second alteration in original) (quoting Iliadis, 191 N.J. at 103).

---

[7] Because, under the Customer Agreement, class members would be liable for defendants' collection expenses, attorney's fees and court costs, defendants assert many members would incur a "net loss."

A-2102-19T1

To certify a class action, the putative class plaintiff must first establish the requirements stated under Rule 4:32-1(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are commonly referred to as "numerosity, commonality, typicality and adequacy of representation." Dugan, 231 N.J. at 47 (quoting Lee, 203 N.J. at 519). Once the named plaintiff has established the requirements in Rule 4:32-1(a)(1), he or she must also satisfy either Rule 4:32-1(b)(1), (2) or (3).

On appeal, defendants have not argued plaintiffs did not meet the Rule 4:32-1 requirements of numerosity, commonality, typicality and adequacy of representation. The court did not address those conditions in its June 2018 decision. We consider then only whether plaintiff satisfied the prerequisites for class certification under Rule 4:32-1(b)(3), which requires the court to consider whether:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior

16

to other available methods for the fair and efficient adjudication of the controversy.

To determine predominance under Rule 4:32-1(b)(3), a court determines whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Dugan, 231 N.J. at 48 (quoting Iliadis, 191 N.J. at 108).

Here, plaintiffs allege "The Law that Applies to Your Agreement" provision in the Customer Agreement violated the TCCWNA. We are guided by several recent Supreme Court decisions.

The TCCWNA was enacted "to prevent deceptive practices in consumer contracts." Dugan, 231 N.J. at 67-68 (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457 (2011)). The statute provides that it is unlawful for a "seller, lessor, creditor, lender or bailee" to "offer to any consumer[8] . . . or enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed . . . ." N.J.S.A. 56:12-15. Any person who violates the TCCWNA "shall be liable to the aggrieved consumer for a civil penalty of

_____

8 TCCWNA defines "consumer" as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." N.J.S.A. 56:12-15.

not less than $100.00 or for actual damages, or both . . . together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

To prevail on a TCCWNA claim, a plaintiff must prove four elements:

> first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer."
>
> [Spade, 232 N.J. at 516 (alterations in original) (quoting N.J.S.A. 56:12-15, -17).]

The Spade Court sharpened the term "aggrieved consumer," defining it as "a consumer who has suffered some form of harm as a result of the defendant's conduct." Id. at 522 (citations omitted). "In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an 'aggrieved consumer' for purposes of the TCCWNA." Id. at 524. The Court cautioned that "harm" or "adverse consequences" does not necessarily mean that the plaintiff must have incurred "monetary damages." Id. at 523. The Court stated:

Proof of harm resulting from contract language prohibited by N.J.S.A. 56:12-15 may warrant a civil penalty under N.J.S.A. 56:12-17, even if the harm is not compensable by damages.

In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an "aggrieved consumer" for purposes of the TCCWNA.

[Id. at 524.]

In reviewing the court's decision against that backdrop, we cannot discern whether the court found Browne and the putative class demonstrated harm sufficient to deem them "aggrieved consumers" under the TCCWNA. Therefore, we are constrained to reverse and remand for reconsideration of plaintiffs' motion.

In her oral decision on June 29, 2018, the judge recited defendants' arguments. Specifically, she noted defendants contended Browne, as the putative class representative, could not prove each class member was an aggrieved consumer under N.J.S.A. 56:12-17 "without undertaking highly individualized inquiries." She referred to defendants' assertion that plaintiffs would have to prove that each class member interacted with the "alleged offending writing and the particular provisions of that writing." She then stated: "At a minimum the [c]ourt would need to determine who received the customer

19

agreement, actually read it, and specifically th[e] part . . . that read . . . the law that applies to your agreement." It is unclear whether the court is still referring to defendants' arguments or making a finding on the "interaction" requirement or referring to the predominance requirement under Rule 4:32-1(b)(3).

The judge continued to refer to defendants' arguments in her next sentence, noting their assertion that, under the TCCWNA, the putative class can only constitute aggrieved consumers who have incurred actual harm. The judge stated, "Well, the [c]ourt feels that this . . . would be an aggrieved consumer in terms of the ability to determine the applicable statute of limitations."

That statement seems to be a finding that defendants' conduct violated the TCCWNA, but as stated, that is not sufficient to find plaintiffs are aggrieved consumers. Furthermore, the court did not address the second requirement under Spade – whether plaintiffs suffered any adverse consequences or harm from the violation.

On remand, the court should consider plaintiffs' motion for reconsideration of the June 2018 decision anew. The analysis must include a determination whether class certification is appropriate under Rule 4:32-1 to determine whether plaintiffs are aggrieved consumers under the TCCWNA. The court should specifically address whether the court would be required to

undertake individualized inquiries to determine whether the putative class members "interacted" with the disputed contract term, and whether the putative class members sustained any actual harm or adverse consequences as a result of the claimed TCCWNA violation, as required by <u>Spade</u>.

The court must also determine the issue of predominance under <u>Rule</u> 4:32-1(b)(3) – whether common questions of law and fact predominate over individual questions.  Because the court permitted plaintiffs to amend its complaint to add an injunctive class, on remand the court must determine whether plaintiffs have satisfied class certification under both <u>Rules</u> 4:32-1(b)(2) and (b)(3).

Reversed and remanded for further proceedings in accordance with this decision.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2102-19T1