**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5545-18T3
     A-5546-18T3
     A-5548-18T3
     A-5549-18T3

JACQUELINE SUTTON and
MELANIE RYAN, on behalf
of themselves and all others
similarly situated,

  Plaintiffs-Respondents,

v.

HOFFMANN-LA ROCHE INC.,
THE CITY OF CLIFTON, THE
TOWNSHIP OF NUTLEY, and
DELUXE CORPORATION,

  Defendants-Appellants.

_____

HOFFMANN-LA ROCHE INC.,

  Defendant/Third-Party
  Plaintiff-Appellant,

v.

THE TOWNSHIP OF NUTLEY,
DELUXE CORPORATION, BRIAD

GROUP, S&H LTD., CLIFTON
LIFESTYLE CENTER, LLC,
MERCER ENGINEERING
WORKS, MERCER-ROBINSON
COMPANY, BENNETT MACHINERY
CORPORATION, JOHN
DUSENBERY CO., INC.,
INTERNATIONAL PAPER COMPANY,
NEVINS COMPANY, NEVINS-
CHURCH PRESS, UNION BAG-
CAMP PAPER CORPORATION,
UNION CAMP CORPORATION,
LUBRIZOL CORPORATION,
LUBRIZOL ADVANCED
MATERIALS, INC., SCHER
BROTHERS, SCHER CHEMICALS,
INC., NOVEON, INC., MAJOR
AUTOMOTIVE PRODUCTS COMPANY,
MAJOR ENTERPRISES, INC.,
SCANDIA PACKAGING MACHINERY
COMPANY, MOTIVA ENTERPRISES,
LLC, SHELL OIL COMPANY,
UTZTI, LLC, UTZ TECHNOLOGIES,
INC., UTZ ENGINEERING, INC.,
LYNN HOLDINGS LLC, DIME
REALTY LLC, and LOCKHEED
MARTIN CORPORATION,

     Third-Party Defendants.
_____

THE CITY OF CLIFTON,

     Third-Party Plaintiff,

v.

E.I. DU PONT DE NEMOURS AND

COMPANY,

     Third-Party Defendant.

_____

DELUXE CORPORATION,

     Defendant/Third-Party
     Plaintiff,

v.

LOUIS BERGER GROUP, INC.,
LOUIS BERGER & ASSOCIATES,
INC.,

     Third-Party Defendants.

_____

> Argued telephonically April 21, 2020 – Decided May 27, 2020
>
> Before Judges Fisher, Accurso and Gilson.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8724-14.
>
> Owen T. Weaver argued the cause for appellant Township of Nutley (Inglesino, Webster, Wyciskala & Taylor, LLC, attorneys; John P. Wyciskala III, and Owen T. Weaver, of counsel and on the briefs).
>
> Andrew B. Joseph argued the cause for appellant Hoffmann-LaRoche, Inc. (Faegre, Drinker, Biddle & Reath, LLP, and John P. Phillips (Paul Hastings, LLP) of the California bar, admitted pro hac vice, attorneys; Andrew B. Joseph, Jennifer G. Chawla, and John P. Phillips, on the briefs).

A-5545-18T3

Diana C. Manning argued the cause for appellant Deluxe Corporation (Bressler, Amery & Ross, PC, attorneys; Donald Jay Camerson II, Diana C. Manning, and Benjamin J. DiLorenzo, on the briefs).

Alexander Hemsley III argued the cause for appellant City of Clifton (DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys; Alexander Hemsley III, and Kevin M. Kinsella, on the briefs).

Austin B. Cohen argued the cause for respondents Jacqueline Sutton and Melanie Ryan (Levin, Sedran & Berman, and the Law Office of Howard Davis, PC, attorneys; Austin B. Cohen, Howard P. Davis, Anne M. Ronan, and Drew Levinson, on the brief).

Gavin J. Rooney argued the cause for amicus curiae New Jersey Civil Justice Institute (Lowenstein Sandler, LLP, attorneys; Gavin J. Rooney, Joseph Fischetti, and Justin Corbalis, on the brief).

PER CURIAM

Because we normally exercise liberality in granting leave to appeal in such matters, see Daniels v. Hollister Co., 440 N.J. Super. 359, 361 n.1 (App. Div. 2015), we granted leave to consider defendants' interlocutory appeals of an order granting class certification. Defendants Hoffmann-LaRoche, Inc., Deluxe Corporation, Township of Nutley, and City of Clifton[1] argue that the trial judge

---

[1] These defendants separately moved for leave to appeal. We granted all those motions and calendared the four interlocutory appeals together; they are now consolidated for purposes of deciding the appeals in a single opinion.

failed to apply the correct legal standard and that plaintiffs failed to satisfy the requirements for class certification under Rule 4:32-1. We reject these arguments and affirm.

I

In December 2014, plaintiffs filed their complaint against Hoffmann-LaRoche, Inc. (Roche) seeking damages for the reduction in the value of their homes caused by widespread groundwater contamination emanating from Roche's former[2] 118-acre research, development, and production facility in Nutley and Clifton. Since 1992, Roche has been investigating and attempting to remediate contamination associated with its operations in accordance with New Jersey Department of Environmental Protection regulations. As part of those efforts, Roche retained an environmental consulting firm, TRC Environmental Corporation, to investigate and identify the contamination's spread and duration. In 2013,[3] TRC submitted its "Roche Nutley Enhanced Notification and Public Outreach Plan" in accordance with the public notification requirements of the NJDEP's Administrative Requirements for the

---

[2] Roche ceased all operations at the site in December 2013.

[3] TRC also submitted a plan, known as the Enhanced Public Notification Plan, to the NJDEP in 2009.

Remediation of Contaminated Sites, N.J.A.C. 7:26C-1.7. Among other things, the plan required Roche to distribute public notification letters to the owners and tenants of properties within 200 feet of each area of off-site contamination, as well as any properties within 200 feet of the block and lot from which the contamination exited the site, of any groundwater contamination detected above New Jersey Ground Water Quality Standards (known as the Classification Exception Area or CEA).

By February 2015, plaintiffs served discovery demands on Roche, seeking information about its former operations and the site's environmental history. Five months later, plaintiffs amended their complaint to add Clifton as a defendant, claiming Clifton had also caused or contributed to the contamination by failing to properly maintain certain leaking municipal sewers that ran under or near the site. A few months after that, Roche filed a third-party complaint against Nutley and Deluxe alleging they caused or contributed to the groundwater contamination. Plaintiffs then filed a second amended complaint to add Nutley and Deluxe as defendants.

In March 2017, plaintiffs sought leave to file a motion for class certification. In opposition, Roche argued that such a motion would be premature because Roche intended to amend its third-party complaint to add

additional parties, and the inclusion of such parties would affect the class-certification analysis. The judge then presiding over the matter denied plaintiffs' request to file a motion for class certification at that time so as to allow Roche to amend its third-party complaint and take depositions pertaining to the issue of class certification only.[4]

In May 2017, Roche amended its third-party complaint to add nearly thirty parties it contends are liable to plaintiffs or Roche for causing or contributing to the alleged contamination. In November 2017, plaintiffs filed a third amended complaint, asserting claims against Roche, Clifton, Nutley, and Deluxe to recover economic losses on behalf of all residential property owners whose properties are located on, or within 200 feet of, contamination at and emanating from the site. Plaintiffs alleged that "[f]or decades, Roche released abnormally dangerous and hazardous chemicals into the soil and groundwater at the Roche [s]ite as a result of the improper storage, transport, handling and disposal of

---

[4]  Roche then claimed it had produced for plaintiff over 600,000 pages of documents, which included information about "the site, surrounding areas, the plumes that are there, [and] extensive data and historical information about operations at the facility." Plaintiffs argued those materials related only to the kind of environmental contaminants present and did not provide any information about how those environmental contaminants were released. Accordingly, plaintiffs sought to obtain from Roche information in the latter category but the judge found that unnecessary for the class certification analysis: "I don't see any reason to proceed with merits discovery until the class is certified."

these chemicals and of Roche's industrial process wastewater."  They also alleged that Roche:

> failed to take proper steps to remediate the environmental contamination at and emanating from the Roche [s]ite. . . . Thus, for decades pollutants released at and in the vicinity of the Roche [s]ite percolated into groundwater and migrated off-site, forming a plume of contamination extending under and adjacent to the residential properties of [p]laintiffs and [c]lass [m]embers.

Plaintiffs additionally claimed that Roche installed and operated at least six open borehole water-production wells that pumped millions of gallons of water per day, and as a result, commingled, deepened and exacerbated the off-site migration of the Roche contamination.

Plaintiffs' third-amended complaint also alleges that Clifton and Nutley operate municipal sewer pipes running under the site and that cracks and leaks have contributed to the contamination.  And plaintiffs allege that from 1952 to 1993, Deluxe operated a check printing business near the site and disposed of hazardous waste in dry wells and in an underground storage tank that also contributed to the contamination.  Their third amended complaint alleges trespass, nuisance and negligence against all four defendants, and strict liability against Roche and Deluxe.

A-5545-18T3

In January 2018, plaintiffs moved for class certification. Defendants filed opposition in September 2018, and plaintiffs replied in December 2018. The trial judge heard argument in March 2019, and ruled the following month. The judge's April 12, 2019 order granted certification of a class of

> [a]ll residential property owners whose property is located on or within 200 feet of the Roche Contamination or within the area of Roche's proposed CEA. Excluded from the Class are Roche, its parent, subsidiaries, and controlled entities, and government entities.

A few weeks later, we granted defendants' motions for leave to appeal the April 12, 2019 order.

II

In reviewing an order either granting or denying class certification, we must first evaluate whether the trial judge followed the class action standard set forth in Rule 4:32-1. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017); Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 506 (2010). In reviewing that determination, we do not "act as a factfinder with respect to plaintiffs' substantive claims." Dugan, 231 N.J. at 55 n.8. We look, instead, to see whether the trial judge applied correct legal principles and whether, in so doing, the grant or denial of certification constituted an abuse of discretion.

A-5545-18T3

Defendants initially argue that the judge failed to conduct a "rigorous analysis" of the evidence presented when determining the propriety of class certification. Id. at 49. This examination is not necessarily limited to the allegations of the plaintiff's pleadings, but must include an analysis of the "remaining pleadings, discovery (including interrogatory answers, relevant documents, and depositions), and any other pertinent evidence in a light favorable to plaintiff." Ibid.

As a general matter, the parties here dispute what should be considered the true record for this purpose. That is, defendants argue the judge should have considered all that was presented instead of accepting as true plaintiffs' pleadings while refusing to consider defendants' evidence that supported a hydrogeologic version different from that alleged in plaintiffs' pleadings. In that regard, defendants argue they submitted evidence regarding the cause of the contamination not to show plaintiffs will ultimately fail to prove their claims but to demonstrate plaintiffs failed to meet their burden as to all class certification requirements. They claim the judge summarily discarded this evidence as "premature merits evidence" and that the judge incorrectly applied the "law of the case" doctrine to justify that refusal.

In response, plaintiffs argue defendants' approach to certification erroneously relies on federal standards when it was New Jersey principles that the judge was obligated to apply. They claim that even though Rule 4:32 and Federal Rule of Civil Procedure 23 are "textually similar," our standard for class certification has always been more liberal than the federal standard and, in fact, even more so than before, as the federal courts have "become more restrictive." Plaintiffs are correct in the sense that while we often look to federal decisions for guidance, we do so only to the extent they do not contradict established state law standards. See Daniels, 440 N.J. Super. at 366 (rejecting consideration of federal interpretations of Federal Rule of Civil Procedure 23 that counter our "liberality in favor of certification").

So, in response to defendants' argument, plaintiffs contend our jurisprudence unambiguously controls the disputed issue of what constitutes the true record for purposes of class certification analysis. They argue that defendants attempted to defeat class certification by relying on improper expert opinion evidence that sought to refute the factual allegations in the complaint and that the judge would have erred had he relied on defendants' description of the contamination as an alternative factual basis for the certification analysis.

A-5545-18T3

In support, plaintiffs rely on <u>Lee</u>, 203 N.J. at 525-26, where the Supreme Court reversed because the trial court failed to accept the factual allegations in the complaint as true at the certification stage and for assuming that defendant would prevail on some of its scientific defenses. As the Court held in <u>Lee</u>, expert opinion evidence introduced to support or deny the factual allegations of a complaint should be given "no weight" at the class-certification stage. <u>Lee</u>, 203 N.J. at 525 n.11.

In considering the parties' dispute about what constitutes the true record for these purposes, we should start by acknowledging that a class action is a procedural device that permits one or more members of a class to sue or be sued as representative parties on behalf of all members. Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 4:32 (2020). The device allows an otherwise vulnerable class of diverse individuals with relatively small claims access to the courthouse. <u>Lee</u>, 203 N.J. at 518. "Unitary adjudication through class litigation furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." <u>See</u> <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 104 (2007).

Moreover, our courts have repeatedly and consistently held that the class action rule is required to be liberally construed in favor of permitting certification, Dugan, 231 N.J. at 46-47; Lee, 203 N.J. at 518; Iliadis, 191 N.J. at 103, and that certification should be permitted unless there is a clear showing that it is inappropriate or improper. While it is true a court "must 'accept as true all of the allegations in the complaint' and consider the remaining pleadings, [as well as] discovery (including interrogatory answers, relevant documents, and depositions)," this other evidence – if pertinent – must be viewed "in a light favorable to plaintiff." Lee, 203 N.J. at 505 (quoting Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 376 (2007)). The trial court must "give a deferential view to plaintiff's case at the class-certification stage," Lee, 203 N.J. at 525, as must this court in reviewing the trial court order. And, so, it is in this sense that the certifying court must undertake a "rigorous analysis" of the pertinent evidence to determine if the Rule's requirements have been satisfied. Iliadis, 191 N.J. at 106-7. Accordingly, while a cursory review of the pleadings is insufficient, id. at 107, the certifying court is not to make a preliminary determination of the merits of the underlying claims when determining whether the class should be certified, Delgozzo v. Kenny, 266 N.J. Super. 169, 180-81 (App. Div. 1993).

A-5545-18T3

Defendants claim the trial judge failed to undertake this analysis because he declined to consider evidence defendants introduced that allegedly demonstrated plaintiffs' inability to satisfy the requirements for class certification. This evidence, according to the judge, could not defeat certification because defendants were attempting to contradict the factual allegations of the complaint by arguing they were not the source of the contamination and that the contamination was conveyed by a variety of independent and separate plumes with various off-site sources for which the defendants are not individually responsible. To the extent the judge viewed defendants' hydrogeologic contentions as geared toward suggesting a lack of merit in plaintiffs' claims, he correctly declined to give it weight in the analysis. This was a proper exercise of the judge's discretion.

We also reject the significance defendants would have us give to their expert opinion evidence for two additional reasons.

First, consideration of defendants' merits evidence as the means for challenging class certification would promote unfairness in the disposition here because merits discovery had been stayed. As a sideshow to the class-certification contest, the parties dispute whether the order staying merits discovery constituted "law of the case." We do not quite understand the

significance of this argument. While the law of the case doctrine does not typically apply to orders that do not give affirmative, substantive relief, the record is clear that the prior judge had limited discovery to that which related to class certification. Whether that ruling constituted law of the case or not ignores the fact that plaintiffs were obligated to comply with the court's order and, in complying, did not have the opportunity to obtain discovery regarding the merits that might have refuted that evidence upon which defendants rely. In these circumstances, it would be unfair to give extensive weight to the evidence offered by defendants to suggest plaintiffs' claims are based on an incorrect assumption as to the cause of the contamination.

Second, what defendants have provided is evidence that serves their view of the sufficiency of plaintiffs' claims. That is, defendants have offered evidence from experts to show that off-site plumes "extend beneath virtually every part of the [s]ite," and that the "on-[s]ite production wells did not result in significant downward migration of lateral spreading." Defendants are entitled to take that position of course, but that doesn't mean these assertions have been established. In fact, the NJDEP has found defendants' assertion about off-site plume origin to be "factually inaccurate" and has stated it "cannot agree with Roche's conclusion that historic pumping . . . did not cause any downward or lateral

15

movement of contaminants from surface and near surface discharges."  So, even if the judge was obligated to give greater weight to the views of defendants' experts than he did, it would only lead to a recognition that those contentions are disputed.  Lastly, it is well established that plaintiffs were not required at the certification stage to offer opposing expert evidence.  It is enough that the proponent of class certification intends to do so during the course of the litigation.  Lee, 203 N.J. at 525 n.11; In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 428 (1983).

In the final analysis, the judge correctly evaluated defendants' disputed hydrogeologic contentions in determining whether class certification was appropriate here.

III

In viewing the scope of what was properly before the judge in ruling on the motion as discussed above, we turn to whether plaintiffs were able to satisfy the four general prerequisites for class certification under Rule 4:32-1(a): "numerosity, commonality, typicality, and adequacy of representation."  Lee, 203 N.J. at 519.

Numerosity.  Roche, Nutley and Clifton do not dispute the trial court's finding that plaintiffs satisfied the numerosity requirement.  Deluxe, however,

16

argues the number of proposed class members with potential claims against Deluxe is not "so numerous that joinder of all members is impractical." Deluxe argues that while plaintiffs claim the proposed class consists of approximately 400 property owners, the alleged groundwater contamination related to Deluxe affects only four properties located within 200 feet of the contamination. Thus, Deluxe argues the number of property owners potentially affected by its alleged contamination is extremely limited and this lack of numerosity should have defeated class certification in its entirety or, at a minimum, class certification as to plaintiffs' claims against Deluxe.

The numerosity requirement is satisfied when a class "is sufficiently numerous so that joinder is not a satisfactory alternative." Cadillac, 93 N.J. at 425. The number of purported class members is "not wholly dispositive of the analysis[,]" and plaintiffs do not have "to show the exact size of the class in order to satisfy numerosity." W. Morris Pediatrics, P.A. v. Henry Schein, Inc., 385 N.J. Super. 581, 595 (Law Div. 2004). "Rather, an equal part of the inquiry centers around whether 'the difficulty and or inconvenience of joining all members of the class calls for class certification.'" Id. at 596 (quoting Lerch v. Citizens First Bancorp., Inc., 144 F.R.D. 247, 250 (D.N.J. 1992)).

The judge's determination on this point is fully supported by the record. The certified class includes the owners of more than 400 residential properties who have been identified by and received regulatory notices from Roche. The Court approved the certification of a smaller class of homeowners in Strawn v. Canuso, 140 N.J. 43 (1995). And federal courts have found numerosity satisfied with even smaller classes. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001); Rivet v. Office Depot, Inc., 207 F. Supp. 3d 417, 429 (D.N.J. 2016).

Deluxe, as we have noted, argues the contamination emanating from its former site may only have affected a small portion of the properties owned by class members. That may ultimately turn out to be true but there is evidence to suggest that Deluxe's alleged spills may have migrated to at least one of Roche's production wells, thereby commingling with Roche's contamination.

In any event, Deluxe's arguments are more relevant to issues of liability, contribution, and allocation of damages, all of which can be properly addressed when the merits of the dispute are adjudicated. We also recognize that the trial judge may later find it appropriate to exercise his discretion to subdivide the class. R. 4:32-2(d). Again, because merits discovery was stayed, it is not clear whether or to what extent Deluxe's argument about numerosity may prove

18

accurate.  At this stage, we cannot find an abuse of the judge's discretion in determining that the proposed class had sufficient numerosity.

Commonality.  In considering commonality, the judge correctly recognized that the threshold is low and may be satisfied by a single common question.  Delgozzo, 266 N.J. Super. at 185.  The judge properly determined that plaintiffs satisfied the commonality requirement, as issues of law or fact common to the class include:  whether class members' properties have been contaminated; whether defendants are liable to the members of the class for their release of abnormally hazardous substances under or near class members' properties; whether defendants contributed to the exacerbation of the contamination; and whether class members have suffered a diminution in the value of their properties due to the presence of the contamination.

Deluxe argues to the contrary.  Deluxe claims that while plaintiffs may have raised common issues, the inquiries with respect to the source and extent of contamination are not common across the class.  Deluxe argues this matter does not involve the resolution of a discrete common issue applicable across the entire class given the varying sources of contamination alleged by the parties, the varying extent of contamination affecting each property within the class, and – with respect to Deluxe – the limited off-site extent of its alleged plume.

We reject Deluxe's attempt to so finely parse plaintiffs' contentions. Commonality was properly found because the claims shared by the class arise out of a common set of circumstances: defendants' chemical releases (even if mostly by Roche) were allegedly impacted by Roche's production wells, commingled, and spread off the site in legal proximity to the class members' homes.

Typicality. We have held that "[i]f the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members, the typicality requirement is satisfied," Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 180 (App. Div. 2006). That is, "[t]he claims of the representatives must 'have the essential characteristics common to the claims of the class.'" Cadillac, 93 N.J. at 425. The representatives' claims need not be identical to those of the class members, Laufer, 385 N.J. Super. at 180, and class representatives need not establish that their experience was exactly the same as every class members' in order to establish typicality. Little v. Kia Motors Am., Inc., 455 N.J. Super. 411, 439 (App. Div. 2018).

Defendants argue the named plaintiffs' claims are not typical of the class because: (1) the nature, extent, and source of contamination affecting each

property within the proposed class is necessarily different; and (2) the properties and claimed damages across the class are not typical of one another. Disregarding the fact that each class member seeks to assert the same claims of negligence, nuisance and trespass, defendants argue the claims of the putative class members and named plaintiffs are highly individualized. Common evidence – they claim – will not suffice to demonstrate causation between the purported injury by the various defendants and the diminution, if any, of plaintiffs' and the putative class members' property values.  Defendants also challenge plaintiffs' assertion that they will establish damages based on a common class-wide percentage without offering a report to support the existence of a class-wide damages model or providing any explanation to support such theory.  They claim plaintiffs' unspecified damages model is insufficient to establish the requirements for class certification because the determination of damages, if any, will require, among other things, an individualized analysis of the extent of contamination in the groundwater under each property, the impact of that contamination on the owner's use and enjoyment of the property, and the ultimate effect, if any, on their property values.

Nutley additionally argues the judge erred in accepting plaintiffs' contention that there existed a pretrial presumption of damages – without proof

21

– and in concluding that plaintiffs did not have to present a reliable mathematical formula for calculating damages to obtain class certification. Nutley claims plaintiffs failed to establish a pretrial presumption of damages because "it is not proper to assume that a group of properties have in fact been negatively impacted in a similar manner by environmental conditions."

We reject all these arguments regarding typicality. In cases where the named plaintiffs and putative class members are impacted by the same unlawful conduct, typicality is generally satisfied. Laufer, 385 N.J. Super. at 181. Because the named plaintiffs assert claims that arise from the same alleged wrongdoing as that affecting the class members, the judge did not abuse his discretion in finding they satisfied the typicality requirement.

In addition, plaintiffs did not need to produce proof of damages at this stage in order to show typicality. It is enough at this stage for plaintiffs to represent they intend to support their allegations with expert testimony at trial. Plaintiffs do not dispute their burden here to prove and quantify their damages at trial, but they argue they met their burden by alleging damages of a common nature for all class members – a reduction in their residential property values – and by proposing a mathematical approach to prove them. During merits

discovery, plaintiffs intend to identify econometric and appraisal experts to produce expert reports based on market data to quantify their damages.

We agree with the trial judge that typicality requires the claims of the named plaintiffs – as the representatives of the proposed class – to have the essential characteristics common to the claims of class members. This was satisfied here, as the claims asserted by the named plaintiffs arise from the same wrongdoing and are identical to the claims of the putative class – that is, each member of the class alleges to have suffered economic harm as a direct and proximate result of the contamination emanating from the Roche site. And all their properties are stigmatized in the same way due to that proximity. Accord Financial Servs. Vehicle Tr.. v. Panter, 458 N.J. Super. 244 (App. Div. 2019). The class members stand obligated to advise any potential purchaser of the fact that the property is within the CEA and these class members are unable to drill or use any private water wells on their property during the CEA's duration. See N.J.A.C. 7:26C-7.3.

Moreover, individualized proof of damages is the norm for class actions. Muise v. GPU, Inc., 371 N.J. Super. 13, 55 (App. Div. 2004). And, under certain circumstances, the class may be permitted to present class-wide average damages based on a reliable mathematical formula. Little, 455 N.J. Super. at

432-36. Departure from the general preference for individualized proof may be warranted if plaintiffs provide a reliable mathematical formula for calculating aggregate damages. <u>Muise</u>, 371 N.J. Super. at 52.[5] If plaintiffs cannot establish a reliable method to calculate damages on a class-wide basis, then they will have to prove individual damages, which, as already note, is often the norm in class actions. <u>Id.</u> at 55.

In granting plaintiffs' motion for class certification, the trial judge noted that our courts have permitted proof of common class-wide damages and accepted plaintiffs' argument that they intend to provide expert evidence proving an overall class-wide percentage of property value diminution attributable to the contamination during merits discovery. The judge did not abuse his discretion in allowing plaintiffs – at this stage of the litigation – to proceed on the basis that during discovery, plaintiffs will identify their methodology to calculate damages on a class-wide basis through economic theory, data sources and statistical techniques common to the class.

---

[5] We need not presently decide if or how the Court's recent holding about trespass damages in <u>Kornbleuth v. Westover</u>, __ N.J. __ (2020) might apply here since we have no reason to assume those principles would apply differently to class members.

A-5545-18T3

Adequacy of Representation. When considering "whether the putative class representative will be able to 'fairly and adequately protect the interests of the class[,]' . . . 'courts consider the adequacy of both the named representative and class counsel.'" Laufer, 385 N.J. Super. at 181. "To satisfy this requirement, 'the plaintiff must not have interests antagonistic to those of the class.'" Id. at 182 (quoting Delgozzo, 266 N.J. Super. at 188). The interests of the class representative and the class members need not be identical and the named representative need only be adequate. Ibid.

Plaintiffs' first complaint named Ezzedin Bautista and Areilly Laszlo as class representatives. They have since been substituted with Jacqueline Sutton and Melanie Ryan. The former is the owner of residential property on Brookdale Avenue in Nutley purchased in or around 1992. At the time of her deposition in May 2018, Sutton was not trying to sell her home, but she expressed concern over the diminished value of her property and the difficulty likely to be encountered upon selling her home due to the need to disclose:

> Nobody wants to live on poison. Nobody wants to live with the fact that your property value could go down simply because when somebody comes to buy the thing and I have to say, well, there's poison under there, that is what I will think will diminish the property value, nothing else.

. . . . [I]f I have to disclose that there's contaminants underneath my house when someone comes to buy it, and if they compare that to a clean house, I don't think they're going to choose mine.

Ryan is the owner of the residential property located on Cottage Place in Nutley purchased in May 2000. At the time of her deposition, also in May 2018, Ryan stated she had considered selling her home in 2015 but did not then list it; she does, however, anticipate moving at some point in the future.

In considering whether these parties will fairly and adequately protect the interests of the class, the judge correctly observed that courts generally consider whether the named plaintiff has interests that are antagonistic to the interests of the proposed class, and whether plaintiff's attorney is qualified, experienced and generally able to conduct the proposed litigation. The judge determined that the representative parties assert a common interest of maximizing recovery for all members of the class whose properties have been impacted by the contamination. Though defendants argue the named representatives failed to establish they will adequately protect the interests of the class members because there remain individual issues with respect to damages, we have determined that the interests of the class representative and the class members need not be identical. Laufer, 385 N.J. Super. at 182.

As the named class representatives seek to recover economic losses on behalf of all residential property owners whose properties are located on, or within 200 feet of, the contamination emanating from the Roche site, the trial judge properly determined that the named plaintiffs will adequately represent the collective interests of the class. Furthermore, the judge found that the attorneys representing the class are qualified and experienced in environmental law and class action litigation, a determination that defendants do not appear to challenge.

The judge was entitled to determine on this record that plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation, and that the class representatives do not have interests antagonistic to other class members. Delgozzo, 266 N.J. Super. at 188. The record supports the determination that both the named representatives and class counsel are adequate stewards of the class members' interests.

IV

In addition to finding that plaintiffs satisfied the four elements of Rule 4:32-1(a), the trial judge also found that plaintiffs satisfied the requirements of Rule 4:32-1(b)(3). For a class action to proceed under subsection (b)(3), the trial court must find "that the questions of law or fact common to the members

27

of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Ibid.

In making the predominance and superiority assessments, a certifying court must undertake a "rigorous analysis" to determine if the Rule's requirements have been satisfied. Iliadis, 191 N.J. at 106-07. That analysis requires a look "beyond the pleadings [to] . . . understand the claims, defenses, relevant facts, and applicable substantive law." Id. at 107 (quoting Carroll v. Cellco P'ship, 313 N.J. Super. 488, 495 (App. Div. 1998)). A cursory review of the pleadings is insufficient. Ibid.

Predominance. In determining whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members, plaintiffs argue courts must consider: (1) the number and significance of common questions; (2) whether the "benefit from the determination . . . [of common questions] outweighs the problems of individual actions"; and (3) whether there is a "common nucleus of operative facts" among all claims. Id. at 108.

Because plaintiffs sought certification pursuant to Rule 4:32-1(b)(3), defendants argue the judge failed to undertake the required assessment of the

motion record to determine if individual issues predominate over common issues and, as a result, incorrectly found that the predominance requirement was met simply because plaintiffs alleged so in their complaint. In addition, defendants argue plaintiffs cannot satisfy this requirement because the pleadings themselves reveal that individual causes of action will predominate. Though plaintiffs have asserted three common causes of action against Roche, Clifton, Nutley and Deluxe – negligence, trespass and nuisance – defendants argue each cause of action requires individual proof of injury proximately caused by each defendant's conduct. They contend that separate, highly individualized inquiries will be required as to each member's property to determine whether and how a particular property has been impacted by contamination and whether such contamination has been caused by a particular defendant, and they claim the answers to these inquiries cannot be assessed on a class-wide basis as they are not uniform across all plaintiffs and defendants. In essence, defendants argue the court will ultimately be required to perform a property-by-property inquiry to determine the existence – if any – of damages.

Additionally, Nutley, Deluxe and Clifton argue they cannot be considered a common cause of contamination because plaintiffs' pleadings are replete with allegations against Roche, claiming Roche released abnormally dangerous and

hazardous chemicals into the soil and groundwater and failed to properly remediate the environmental contamination, thereby creating a plume that migrated under the properties of the proposed class.

Had the trial judge engaged in an appropriate review – defendants argue – he would have determined that plaintiffs' common law causes of action against four distinct defendants, each with fact-intensive claims and defenses, raise numerous and significant individualized questions that predominate over any common ones.[6]

---

[6] In support of this argument – and their arguments challenging commonality and typicality – defendants cite to several federal cases denying class certification in actions seeking damages for diminished property values due to environmental contamination. See Ebert v. Gen. Mills, Inc., 823 F.3d 472, 479 (8th Cir. 2016) (affirming denial of certification of a class seeking damages for diminution of value based on contamination from defendant's facility; given the predominance of individual issues of causation and damages, a "property-by-property assessment" would likely be required at trial to determine whether contamination "is wholly, or actually, attributable to [the defendant] in each instance"); Gates v. Rohm & Haas Co., 655 F.3d 255, 271-72 (3d Cir. 2011) (affirming denial of certification where alleged diminution of property value was based on "extensive periods of contamination with multiple sources and various pathways"); Rowe v. E.I. DuPont De Nemours & Co., 262 F.R.D. 451, 464-65 (D.N.J. 2009) (refusing to certify a class for several claims where the plaintiffs claimed the defendant negligently contaminated groundwater and caused property damage to an entire community). Of course, we are not bound by those federal interpretations. See Delgozzo, 266 N.J. Super. at 188. As we noted earlier, the language of our rule and the federal rule may be textually similar, but our interpretation is far more liberal and permissive toward class certification.

We reject these arguments. We agree with plaintiffs that the judge properly exercised his discretion in finding predominance.

The record demonstrates that the claims arise from the same "common nucleus of operative facts" and raise common questions. The judge recognized that plaintiffs' causes of action overlap substantially and require common proof relying primarily on evidence of the four defendants in creating the contamination, including their historical operations, disposal practices and chemical usage.

To the extent that any of the defendants' arguments suggest that sub-classes or individual damage evidence eventually may become necessary, plaintiffs argue the trial court correctly found that these contingencies are manageable, posing no impediment to its finding of predominance:

> Finally, the fact that each defendant may present conflicting evidence regarding plumes, contaminants and industrial operations in order to limit their individual liability is not a reason to deny certification. Allocation of contribution percentages of liability among joint tortfeas[o]rs is a routine issue of fact in New Jersey environment[al] cases.

Indeed, comparatively minor individual issues, or potential sub-class issues, and defenses based on fragmentation of liability do not defeat predominance. To establish predominance, a plaintiff need not show an "absence of individual

issues or that the common issues dispose of the entire dispute," or "that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner." Lee, 203 N.J. at 520.

Ultimately, in determining whether a class representative has established predominance, a judge should engage in a "pragmatic assessment" of various factors, including the significance of the common questions, whether the "benefit" of resolving common and presumably some individual questions through a class action outweighs doing so through "individual actions[,]" and whether a class action presents, at a minimum a "common nucleus of operative facts." Id. at 519-20; Iliadis 191 N.J. at 108. Stated another way, "the basic question is whether the potential class, including absent members, seeks 'to remedy a common legal grievance.'" Cadillac, 93 N.J. at 431.

In a class-action setting, "[i]ndividual questions of law or fact may remain following resolution of common questions." Lee, 203 N.J. at 520 (quoting Iliadis, 191 N.J. at 108). In the final analysis, the court must determine "whether the proposed class is sufficiently cohesive to warrant adjudication by" collective action through a class representative. Ibid.

The judge properly recognized that plaintiffs seek to determine: (1) whether Roche's operations at the Roche site resulted in the release, discharge

or spill of hazardous chemicals; (2) how Roche's operations at the Roche site affected groundwater flow and exacerbated the migration of the contamination; (3) whether Roche is strictly liable for the Roche contamination; (4) whether Roche's conduct was negligent; (5) whether Clifton contributed to the Roche contamination; (6) whether Nutley contributed to the Roche contamination; (7) whether Deluxe contributed to the Roche contamination; (8) whether plaintiffs' and class members' properties have been contaminated; (9) whether plaintiffs and class members have lost use and enjoyment of their properties; and (10) whether plaintiffs' and class members' properties have diminished in value as a result of the contamination. Though defendants allude to individual issues, including proof of causation and damages incurred by each class member, the judge properly determined that those issues do not foreclose a finding of predominance. See Delgozzo, 266 N.J. Super. at 181.

Superiority and manageability. A court analyzing the superiority requirement must undertake "(1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each

method." Iliadis, 191 N.J. at 114-15 (quoting Cadillac, 93 N.J. at 436); see also Dugan, 231 N.J. at 49.

The putative class members' "lack of financial wherewithal" is an "important factor" in the superiority analysis. Iliadis, 191 N.J. at 115 (quoting Saldana v. City of Camden, 252 N.J. Super. 188, 200 (App. Div. 1991)). In such circumstances, the Court has expressed a concern that, absent a class, the individual class members would not pursue their claims at all, thus demonstrating superiority of the class action mechanism. See Iliadis, 191 N.J. at 104; Int'l Union, 192 N.J. at 384; Muhammad v. Cty. Bank of Rehoboth Beach, 189 N.J. 1, 17 (2006); Daniels, 440 N.J. Super. at 363-64.

The manageability of a class action is another factor to be considered. Lee, 203 N.J. at 520. Denial of class status due to manageability concerns, however, is disfavored and should be the exception rather than the rule. Iliadis, 191 N.J. at 117. Complexity is an inherent trait of class litigation, and our courts have recognized that potential management difficulties are not grounds for class denial when justice can be done only through the class action device. Ibid.

Having said that, we acknowledge that class certification may be denied due to manageability concerns. Id. at 118. These concerns, however, must be grounded in "concrete evidence of actual or likely management problems," not

mere speculation that management complications may arise.  <u>Ibid.</u>  Moreover, our courts are empowered to craft remedies and procedures to address the peculiar problems of class litigation.  <u>Id.</u> at 119.  For example, a judge might: alter or amend the certification of a class, <u>R.</u> 4:32-2(a), or subdivide classes or maintain class status with respect to only particular issues, <u>R.</u> 4:32-2(d).  <u>See</u> <u>Iliadis</u>, 191 N.J. at 119-20.

The trial court judge agreed with plaintiffs' argument that this proposed class action is superior to all other available methods for the fair and efficient adjudication of this controversy because it:

> will permit a large number of similarly situated residential property owners to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender … [and] will enable the adjudication of claims by [c]lass [m]embers who would not be able to justify or afford separate litigation.

Plaintiffs' assertion that it would not be economically feasible for the individual class members to pursue individual claims supports the judge's finding of superiority.  And the judge properly determined that class action is superior to other adjudicatory methods because, absent a class, the individual class members would likely not pursue their claims at all due to a lack of financial wherewithal.  <u>See</u> <u>Int'l Union</u>, 192 N.J. at 384.

A-5545-18T3

Plaintiffs' assertion that judicial economy favors class certification also supports the judge's superiority finding. Plaintiffs argue that the alternative to a class action will be hundreds of individual lawsuits involving duplicate, complex environmental and economic evidence, which would unreasonably burden the court system. In agreeing, the trial judge properly recognized the great judicial economy to be realized through having these issues decided in one proceeding rather than hundreds of individual proceedings.

Though defendants argue that a class action is not superior to other available methods for the fair and efficient adjudication of this controversy because issues of liability, causation and damages may present individualized issues, the judge correctly recognized that these factors do not pose impediments to the manageability of class litigation. If individualized issues present difficulties in the management of this class litigation at a later stage, the trial court may, in the exercise of its discretion, subdivide classes or maintain class status with respect to only particular issues. R. 4:32-2(d). Mere speculation that management issues may arise should not foreclose a finding of superiority.

Accordingly, we conclude that the trial judge properly determined that plaintiffs satisfied the superiority and manageability requirements of Rule 4:32-1(b)(3) as they have demonstrated both economic feasibility and judicial

efficiency support class litigation of this dispute. The proposed class action is sufficiently superior to other available adjudicatory methods.

V

Although not specified in Rule 4:32-1, Nutley argues "establishment of a class action implicitly require[s] . . . that there be an identifiable class." Saldana, 252 N.J. Super. at 201. Nutley claims the judge erred in accepting plaintiffs' proposed class definition of "all residential property owners whose property is located on or within 200 feet of the Roche Contamination or within the area of Roche's proposed CEA" and in finding that plaintiffs' definition presented an identifiable class. Despite the judge's sound and sensible determination that the class is defined by members' receipt of regulatory notices and those property owners damaged in a sale of property during the pendency of this lawsuit, Nutley argues the certified class definition as written is not based on receipt of a regulatory notice or the sale of a property but solely on an uncertain geographic boundary.

Nutley claims that basing the class on a geographic boundary does not create an identifiable class because the class definition arbitrarily declares that certain residential properties, but not other nearby or neighboring properties, suffered a diminution in value. According to Nutley, predicating a class on

geography is both overinclusive and underinclusive because it will include claimants who did not suffer actual damages while it will also omit properties outside the 200-foot range that may not have sold because the seller disclosed the contamination to the buyer.

Roche argues that by defining the class in terms of the class members' proximity to "Roche Contamination," the trial court created an invalid "fail-safe" class that is untenable under Rule 4:32-2(c). Roche argues the class definition is highly prejudicial to Roche and improperly assumes that all class members live in proximity to "Roche Contamination" rather than contamination caused by any of the other defendants to this action.

Plaintiffs dispute Roche's "fail-safe" contention and argue the class is defined objectively by reference to each class members' physical proximity to the contamination and their corresponding receipt of a Roche notice letter, which alone generates damage to the recipients. Plaintiffs claim a "fail-safe" class is a class where inclusion turns on the determination of liability itself. This class, however, is not defined by proof of liability or damages but by receipt of Roche's regulatory notice letters.

Class certification presupposes the existence of a properly defined class. Iliadis, 191 N.J. at 106 n.2. Thus, "[e]ven before one reaches the four

prerequisites for a class action, there must be an adequately defined class." Ibid. "[T]he proposed class must be sufficiently identifiable without being overly broad" and "may not be amorphous, vague, or indeterminate" but "administratively feasible to determine whether a given individual is a member of the class." Ibid.

In granting plaintiffs' motion for class certification, the trial court determined that plaintiffs proposed an objective, reasonable and proper class definition, defined not by subjective conditions but by the proposed class members' receipt of regulatory notices and their proximity to the identified contamination. We agree that this proposed class is sufficiently identifiable, as it includes those homeowners in possession of regulatory notices, as well as the owners of properties within a certain proximity to an already identified area of contamination. The existence of such objective criteria defining the class defeats Roche's argument that this is a fail-safe class action, which is understood to be a class defined in a way that a person qualifies as a member when that person has a valid claim. Byrd v. Aaron's Inc., 784 F.3d 154, 167 (3d Cir. 2015). That is not how the judge defined or described this class.[7]

---

[7] To the extent the particular language chosen to define the class may suggest a fail-safe mechanism for inclusion, the parties may address any concerns about

A-5545-18T3

\* \* \*

Having carefully reviewed the record in light of the parties' arguments, we find no merit in defendants' contentions.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

the wording of the definition by way of a motion in the trial court. In that regard, plaintiffs' counsel agreed, during oral argument in this court, that the phrase "Roche contamination" in the class definition may be removed.